UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
TREVOR MILLER,                       :
                                     :
          Plaintiff,                 :     Civil Action No. 15-7496-BRM-DEA
                                     :
     v.                              :
                                     :     OPINION
WARREN HOSPITAL IPA, PA,             :
CHRISTOPHER MANN, M.D., and          :
DR. JOHN BERNARD                     :
                                     :
          Defendants.                :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendant Christopher Mann, M.D.'s ("Dr. Mann") Motion for Summary Judgment (ECF No. 73); and (2) Defendant Warren Hospital IPA, PA's ("Warren Hospital," together with Dr. Mann, "Defendants") Motion for Summary Judgment (ECF No 74). Plaintiff Trevor Miller ("Miller") opposed both motions. (ECF Nos. 75 and 76.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Dr. Mann's Motion for Summary Judgment is **DENIED** and Warren Hospital's Motion for Summary as to all claims against it expect vicarious liability is **GRANTED**.

**I.      BACKGROUND**

   **A.      Factual Background**

This dispute arises out of Defendants' alleged medical malpractice in the care and treatment of Miller and Miller's mother, Susan Miller, at the time of Miller's birth at Warren Hospital on June 16, 1995. On June 16, 1995, when Miller's mother arrived at Warren Hospital to give birth to him, gram stain and culture and sense tests were conducted, which later revealed she contained

1

meconium stain fluid and was infected with Group B Streptococcus at the time she gave birth. (Dep. of Dr. Mann (ECF Nos. 76-13) at 47-57 and Warren Hospital Lab Report (ECF No. 76-14).) Miller was delivered vaginally, which he alleges caused him to also contract Group B Streptococcus. (ECF No. 76-13 and Am. Compl. (ECF No. 7) ¶ 23.) Subsequent to Miller's diagnosis, he was transferred to Easton Hospital for the purposes of a confirmatory diagnosis and treatment of his condition. Miller alleges that, as a result of being vaginally delivered while his mother had Group B Streptococcus, he developed hydrocephalus, a condition which caused the retention of water in his brain, which in turn caused him to develop cognitive and physical losses. (ECF No. 7 ¶¶ 27-28 and Dep. of John Miller (ECF No. 76-7) at 41, 46-48.) Specifically, Miller alleges his Group B Streptococcus led to the need for a brain shunt, which he still has today, multiple shunt revision surgeries, frequent headaches, emotional distress, academic problems, difficulty concentrating in school, a loss of earnings capacity, and prevented him from participating in organized sports and other recreational activities. (ECF No. 7 ¶¶ 28-33.)

**B.     Procedural History**

On June 15, 2015, Miller filed a Complaint against Defendants in the Eastern District of Pennsylvania. (Compl. (ECF No. 1).) On August 20, 2015, Warren Hospital filed a motion to dismiss or, in the alternative, transfer to the United States District of New Jersey, on the grounds of venue. (ECF No. 4.) On August 26, 2015, he filed an Amended Complaint against Defendants alleging three counts: (1) negligence against Dr. Mann; (2) negligence against Warren Hospital; and (3) vicarious liability against Warren Hospital. (ECF. No. 7.) On September 8, 2015, Warren Hospital re-filed its motion to dismiss or transfer. (ECF No. 12.) On September 25, 2015, Dr. Mann filed a separate motion to dismiss or transfer on the same grounds as Warren Hospital. (ECF No. 15.) On October 8, 2015, the parties stipulated and agreed the matter should be transferred to this

Court and, on October 9, 2015, the Eastern District of Pennsylvania ordered this case be transferred. (ECF Nos. 18, 20.) On November 17, 2015, and January 4, 2016, respectively, Dr. Mann and Warren Hospital filed Answers to the Amended Complaint. (ECF Nos. 27 and 31.)

On April 8, 2016, the parties attended an initial scheduling conference, which resulted in a scheduling order ("Scheduling Order"). (Scheduling Order (ECF No. 36).) Pursuant to the Scheduling Order, the parties were to complete fact discovery by October 3, 2016, and affirmative expert reports were to be submitted by November 1, 2016. (*Id.*) The Scheduling Order was revised on three separate occasions, with the most recent scheduling order being the Revised Scheduling Order III. (Revised Scheduling Order III (ECF No. 62).) Pursuant to the Revised Scheduling Order III, Miller was required to produce social media information requested by Defendants, medical authorizations, and supplemental documents, by no later than March 10, 2017. (*Id.*) The deadline to complete fact discovery was extended to April 15, 2017, and all affirmative expert reports were to be submitted by May 30, 2017. (*Id.*)

On March 2, 2017, Miller provided the Facebook information requested as it pertained to him only and not his mother. (Dr. Mann's Statement of Facts (ECF No. 73) ¶ 20 and Miller's Resp. Statement of Facts (ECF No. 76-1) ¶ 20.) On March 29, 2017, Dr. Mann sent a follow up letter to Miller detailing all of the outstanding discovery that remained to be produced. A second follow-up letter was sent on April 12, 2017. (ECF No. 73 ¶ 33 and ECF No. 73-4 at 20-21.) On April 20, 2017, Dr. Mann's counsel spoke with Miller's counsel who agreed to provide all outstanding discovery. (ECF No. 73-4 at 38.) On April 27, 2017, Dr. Mann sought leave to file a motion to dismiss Miller's Amended Complaint with prejudice for failure to provide social media information for Miller's mother and his medical authorizations. (Letter from Lynne Nahmani,

3

dated April 26, 2017 (ECF No. 63).) On April 28, 2017, Miller provided the outstanding medical authorizations. (ECF No. 73 ¶ 37 and ECF No. 76-1 ¶ 37.)

On May 1, 2017, the parties had a telephone conference regarding discovery with The Honorable Douglas E. Arpert, U.S.M.J. During the conference, Judge Arpert asked Miller if he needed additional time to provide expert reports, and Miller stated he did not. (ECF No. 73 ¶ 8 and ECF No. 76-1 ¶ 8.) On May 5, 2017, Miller offered Defendants an opportunity to review and inspect the materials in his counsel's office regarding imaging studies of Miller's mother, however Defendants did not take advantage of that offer until after the termination of discovery on June 13, 2017. (ECF No. 65; ECF No. 76 at 3; and ECF No. 76-3.) On May 11, 2017, Miller provided his mother's Facebook information. (ECF No. 73 ¶ 24 and ECF No. 76-1 ¶ 24.)

On June 1, 2017, Dr. Mann sought leave of the Court to file a motion for summary judgment against Miller, due to Miller's failure to provide expert reports by May 30, 2017. (Letter from Dr. Mann's Attorney (ECF No. 68).) On June 5, 2017, the Court granted Dr. Mann's request to file a motion for summary judgment against Miller for failure to provide expert reports. (Order (ECF No. 69).) On June 6, 2017, Warren Hospital requested permission to file a motion for summary judgment for the same reasons. (Letter from Warren Hospital (ECF No. 70).) On June 8, 2017, the Court confirmed it was granting Dr. Mann leave to file a motion for summary judgment based upon both Miller's failure to provide expert reports, as well as the failure to timely provide discovery. (Order (ECF No. 71).) On June 9, 2017, the Court granted Warren Hospital's request to file a motion for summary judgment. (Order (ECF No. 72).) On June 13, 2017, and June 14, 2017, respectively, Dr. Mann and Warren Hospital filed motions for summary judgment. (ECF Nos. 73 and 74.) On July 5, 2017, contemporaneously with his oppositions to Defendants' motions for summary judgment, Miller submitted his expert report. (ECF Nos. 75 and 76.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if

the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III. DECISION

### A. Expert Reports

In his moving papers, Dr. Mann argued Miller had not, by that point, provided any export reports to establish a prima facie case against him proving he violated the accepted standard of care, and that Dr. Mann's violation caused Miller's claimed damages. (ECF No. 73 at 6.) Warren Hospital also argued "it is well established that a deviation from the accepted standard of care must be established by qualified expert testimony," and, because Miller had failed to produce an expert report, summary judgment is appropriate. (ECF No. 74 at 3, 4-5.)

In response, Miller argued submission of expert testimony was not required in this case because an ordinary person could understand what occurred to Miller as a result of Defendants' conduct without expert testimony. (ECF No. 75 at 9-10 and ECF No. 76 at 10-11.) In the alternative, Miller argued:

> even if expert opinion is required under the circumstances of this case, the basic outline of the expert's opinion, complete with an opinion delivered to a reasonable degree of medical certainty, was provided to the Defendants in January 2016 when an Affidavit of Merit was filed against them, which identified the applicable standard of care and opined that it had been breached.

(ECF No. 75 at 11 and ECF No. 76 at 11.) He also produced a late expert report contemporaneously with his opposition. (ECF No. 75-12 and ECF No. 76-12.)

In reply, Defendants argued Miller's claims are not subject to the common knowledge exception and that Miller's Affidavit of Merit does not satisfy the expert report requirement. (ECF No. 77 at 5-10 and ECF No. 78 at 1-4.) Dr. Mann individually argued Miller's late-served expert report should be given no weight. (ECF No. 77 at 11.) Warren Hospital contends that, because Miller's late expert report only addresses Dr. Mann, it should be entitled to summary judgment on

7

all claims except vicarious liability for Dr. Mann, which should be limited to the care and treatment provided by Dr. Mann. (ECF No. 78 at 4-5.)

"To establish a prima facie case of negligence in a medical malpractice action, a plaintiff usually must present expert testimony to establish the relevant standard of care, the doctor's breach of that standard, and a causal connection between the breach and the plaintiff's injuries." *Rosenberg v. Tavorath*, 800 A.2d 216, 225 (N.J. Super. Ct. App. Div. 2002) (citing *Estate of Chin v. St. Barnabas Med. Ctr.*, 734 A.2d 778, 785 (N.J. 1999)). "Absent competent expert proof of these three elements, the case is not sufficient for determination by the jury." *Id.* (citing *Sanzari v. Rosenfeld*, 167 A.2d 625, 628 (N.J. 1961); *Parker v. Goldstein*, 189 A.2d 441, 447 (N.J. Super. Ct. App. Div.) *certif. denied*, 191 A.2d 63 (N.J. 1963)). As such, "[t]he general rule in malpractice cases is that 'evidence of a deviation from accepted medical standards must be provided by competent and qualified physicians.'" *Estate of Chin*, 734 A.2d at 785 (quoting *Schueler v. Strelinger*, 204 A.2d 577, 585 (N.J. 1964).) "This is so because a jury should not be allowed to speculate, without expert testimony, in an area where laypersons have insufficient knowledge or experience." *Taylor v. DeLosso*, 725 A.2d 51, 53 (N.J. Super. Ct. App. Div. 1999).

"'[T]he doctrine of common knowledge permits exception to the general rule; when it is applied, expert testimony is not needed to establish the applicable standard of care.' This exception applies only when the defendant's negligence is obvious 'to anyone of average intelligence and ordinary experience.'" *Bornstein v. Monmouth Cnty. Sheriff's Office*, 658 F. App'x 663, 669 (3d Cir. 2016) (quoting *Estate of Chin*, 734 A.2d at 785–86). The doctrine provides that:

> In some medical malpractice cases, the jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of

8

> experts. The doctrine of common knowledge is appropriately invoked where the "carelessness off the defendant is readily apparent to anyone of average intelligence and ordinary experience." [*Rosenberg by Rosenberg v. Cahill*, 492 A.2d 371, 375 (N.J. 1985)]; *see Klimko v. Rose*, [] 422 A.2d 418 (N.J. 1980) (applying common knowledge doctrine to chiropractor who continued to apply pressure to patient's neck after patient became unconscious). Thus, the doctrine of common knowledge applies to a case in which the experience possessed by lay persons, without the explanations of experts, would enable a jury to determine that a defendant acted without reasonable care. "The basic postulate for application of the doctrine therefore is that the issue of negligence is not related to technical matters peculiarly within the knowledge of medical or dental practitioners." [*Sanzari*, 167 A.2d at 632].

*Estate of Chin*, 734 A.2d at 785-86. Only in "unusual" medical malpractices cases "will the common knowledge doctrine be invoked." *Id.* at 785. The New Jersey Supreme Court has cautioned that courts should narrowly construe the exception. *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 501 (N.J. 2001).

If a plaintiff fails to present expert testimony establishing an accepted standard of care, it is proper for the court to grant a dismissal at the close of plaintiff's case. *See Gans*, 762 F.2d at 343 (holding that the plaintiff in a legal malpractice case had failed to establish the existence of a factual dispute on summary judgment where plaintiff failed to submit expert evidence demonstrating deviation from the relevant standard of care); *Optica, Inc. v. Metro Pub. Adjustments, Inc.*, No. 03–5065, 2005 WL 1719134, at *17 (D.N.J. July 21, 2005) (dismissing professional negligence claim on summary judgment where no expert testimony was proffered).

The common knowledge exception is a narrow exception, not applicable here. The standard of care to be provided by a hospital or physician in furnishing obstetrical care and treatment is well beyond the common knowledge of any lay person and requires specialized knowledge. Specifically, this cases involves allegations of negligence with regard to numerous complicated issues including pathology results; diagnosis of Group B Streptococcus; the timing, determination,

and administration of appropriate antibiotics; and the alleged causal connection between Group B Streptococcus's and other physical and neurological conditions. Expert testimony is necessary to establish the relevant standard of care in Miller's case. This is not an instance in which the wrong tooth was extracted, *Hubbard*, 774 A.2d at 500–01, or in which a pharmacist filled a prescription with the wrong drug, *Bender v. Walgreen E. Co.*, 945 A.2d 120, 123 (N.J. Sup. Ct. App. Div. 2008). Therefore, Miller is required to support his claims with an expert opinion.

Miller's opposition brief claims, for the first time, he intended to rely upon Dr. Scott Eder's Affidavit of Merit provided on January 13, 2016. (ECF No. 75 at 11 and ECF No. 76 at 11; *see* Miller's Resp. to Dr. Mann's Interrogs. (ECF No. 77-2) at 5-6 ("Any expert reports will be supplied in accordance with the Court's scheduling order . . . .").)

> Federal Rule of Civil Procedure 26(a)(2)(B) requires that an export report contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

An affidavit of merit does not automatically satisfy the expert report requirement or preclude summary judgment. *Argenziano v. Yaccarino*, No. L–8090–06, 2008 WL 1721547, at *3 (N.J. Super Ct. App. Div. April. 15, 2008) ("Although plaintiffs produced an affidavit of merit, they did not provide an expert report or request an adjournment of the summary judgment motion to permit

them to secure one. Thus, they did not have evidence to establish that the attorney breached a duty of care."); *Rab v. Doner*, No. L–9913–07, 2010 WL 2869528, at *4 (N.J. Super. Ct. App. Div. July 19, 2010) ("However, the fact that the affidavits meet the affidavit of merit statute requirements does not mean that plaintiff is insulated from a motion for summary judgment."); *Tarutis v. Ackerman*, No. L–3603–052008 WL 1987600, at *2 (N.J. Super. Ct. App. Div. May 9, 2008) (noting the trial court had concluded the affidavit of merit did not qualify as an expert report).

Nonetheless, an affidavit of merit could satisfy the expert report requirement. *Scott v. Calpin*, No. 08-4810, 2012 WL 3019955, at *7 (D.N.J. July 24, 2012), *aff'd*, 527 F. App'x 123 (3d Cir. 2013) (stating "an affidavit of merit could satisfy the expert report requirement). However, in this case, it does not. Here, the Affidavit of Merit provided by Miller contains no information as to the factual bases for any of its conclusions as required by Rule 26(a)(2)(B)(ii). (*See generally* ECF No. 32.) This is fatal. Therefore, the Affidavit of Merit provided by Miller does not satisfy the expert report requirement.

Albeit late, Miller provided an expert report contemporaneously with his opposition to Defendants motions. (ECF Nos. 75-12 and ECF No. 76-12.) Dr. Mann argued Miller's late-served expert report should be given no weight because he has already "been prejudiced by [Miller's] delays in both discovery and now in the production of an expert report." (ECF No. 77 at 11.) Specifically, Dr. Mann argued:

> discovery has been delayed in several circumstances leading to [his] initial request to file a motion to compel and now a motion to dismiss. The ability to recall what had occurred in 1995, and to find people who can testify as to the practices of the hospital at that time continues to dissipate with each delay. This is not a matter where the injury just occurred and the Plaintiff was a rush [sic] to find expert reports. Instead, [Miller] has had years to establish his case and provide expert reports within the agreed to deadlines.

11

(*Id.*) Warren Hospital argued that if the Court permits the admission of Miller's late expert report, summary judgment should still be entered in its favor because the only deviation from the standard of care noted in the report is against Dr. Mann. (ECF No. 78 at 4.)

Pursuant to Federal Rule of Civil Procedure 26(a)(2), parties must disclose their experts and the contents of those experts' reports within the time frame set by the court. Fed. R. Civ. P. 26(a)(2)(A)-(D). Where a party fails to make the disclosures required under Rule 26(a), Federal Rule of Civil Procedure 37(c)(1) provides "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995).

The party who has failed to disclose the information bears the burden to demonstrate the nondisclosure was substantially justified or is harmless. *D & D Assocs., Inc. v. Bd. of Ed. of N. Plainfield*, No. 03-1026, 2006 WL 1644742, at *4 (D.N.J. June 8, 2006). "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997). On the other hand, "[a] failure to disclose is considered harmless 'when there is no prejudice to the party entitled to disclosure.'" *D & D Assocs.*, 2006 WL 1644742 at * 4 (quoting *Fitz*, 174 F.R.D. at 591).

The Third Circuit has identified four factors to consider in determining whether a non-disclosure warrants exclusion:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases

> in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *see also Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977) (adding that the importance of the excluded testimony should also be considered). Whether to exclude evidence is left to the discretion of the trial court. *See Newman*, 60 F.3d at 156.

Federal Rule of Civil Procedure 26(a)(2)(D) required Miller to disclose any experts and their reports thirty-six days prior to the date Miller actually disclosed them. (ECF No. 62.) There is no dispute that Miller disclaimed needing additional time to submit his export report (ECF No. 76-1 ¶ 8), and that the Court's deadline to complete all discovery has passed (ECF No. 62). Indeed, Miller acknowledged in his opposition that his export report—which was filed only in opposition to Defendants' summary judgment motions—was late and violated Rule 26(a)(2)(D). (ECF No. 76 at 11-12.)

There is no question that if Miller planned to rely on Dr. Scott R. Eder's expert report, he was required to comply with relevant procedures under the Civil Rules and with the Court's scheduling orders. Miller does not provide an explanation for his dilatory conduct, which lead to the late disclosure of the expert report. The Court would be justified in barring Dr. Eder's expert report and granting summary judgment in favor of Defendants. However, the Court is mindful that the "Civil Rules are to be construed to do substantial justice and facilitate resolution of cases on the merits." *E.M. Sergeant Pulp & Chem. Co. v. Travelers Indem. Co. Inc.*, No. 12-1741, 2015 WL 9413094, at *5 (D.N.J. Dec. 22, 2015)*; see generally* Fed. R. Civ. P. 1. Moreover, this case presents difficult and sensitive issues of proof, involving events long ago. As such, the Court will evaluate the four *Nicholas* factors.

There is no doubt Defendants were surprised by Miller's sudden inclusion of an expert report in his summary judgment papers. Miller's submission of Dr. Eder's report came thirty-six days after the Court-mandated deadline and after the close of discovery. Furthermore, prejudice, in the sense of delay, inconvenience, and increased expense, is obvious. As such, the Court finds this factor weights in favor of excluding Miller's late expert report.

For similar reasons, the Court finds there has been disruption of court proceedings. At the time of the late submission, discovery was closed. The surprise inclusion of Dr. Eder's report will now require the Court to reopen discovery. For obvious reasons, there has been no further progress towards trial. However, this disruption does not come on the brink of a trial date. This factor weighs in favor of excluding Miller's export report.

The Court does not find Miller acted in bad faith in the sense of an intent to delay the case or cause unnecessary expenses. However, it does find Miller's repeated violation of scheduling orders, when accompanied by unsatisfactory explanations, "may be characterized fairly as willful and bad faith." *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 592 (D.N.J. 1994). It is undisputed the Revised Scheduling Order III (ECF No. 62) was not followed, and Miller has failed to provide an explanation for its delay. As such, the Court finds Miller's actions were willful in the sense he knowingly failed to comply with Rule 26 and did not move for relief from that Rule's requirements or from the Court's scheduling order. This factor weighs in favor of excluding Miller's export report.

However, the fourth factor—the ability to cure the prejudice resulting from the violation—leads the Court to select a remedy short of striking Dr. Eder's export report and, in turn, granting summary judgment in favor of Defendants. While a party's failure to meet scheduling orders may deprive the opposing party of information and necessitate the expenditure of costs to force

compliance, *see Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 873-74 (3d Cir. 1994), any prejudice here could be cured by reopening discovery—in particular, by permitting Defendants to depose Dr. Eder and submit a rebuttal expert report. Although this case is three years old, it is not on the verge of trial. In addition, any sense of urgency is militated by the fact that the events in this suit occurred in 1995, approximately 23 years ago. "If there was a danger of fading memories, loss of evidence, or the like, it came and went long ago." *E.M. Sergeant Pulp & Chem. Co.*, 2015 WL 9413094, at *6.

Under these circumstances, the Court is persuaded the prejudice to Defendants can be cured by reopening discovery and shifting costs. Discovery will be open for the limited purpose of Defendants deposing Dr. Eder and to proffer their own expert in rebuttal, should they choose to do so, and Miller will be permitted to depose any such expert. In addition, Defendants may file a new motion for summary judgment at the conclusion of discovery.

Rule 37(b)(2) permits the Court to order a party to pay the opposing party's "reasonable expenses, including attorney's fees" caused by noncompliance, unless the noncompliance "was substantially justified or other circumstances make an award of expenses unjust." For the reasons expressed above, the justification for this course of conduct was not substantiated and it caused Defendants to incur needless additional expenses. The Court will therefore order that Miller pay the reasonable costs and fees occasioned by the late disclosure of Dr. Eder's report to both Defendants. Such costs and fees will consist of those that would not have been necessary if Miller had timely submitted the expert report. The costs and fees should focus on duplicative work, i.e., work that would not have been done, or expenses that would not have been incurred, if Miller had filed the expert report by May 30, 2017. The shifted expenses shall not include the cost of Dr. Eder's deposition, or the retention of an opposing expert, which would have occurred had Dr.

Eder's report been timely filed. Defendants have thirty days from this Opinion to submit a declaration of such costs.

Lastly, Warren Hospital's Motion for Summary Judgment as to all claims against it except vicarious liability is **GRANTED**. Miller's late-served export report only discusses Dr. Mann's deviation from the standard of care. (*See* ECF No. 75-12.) Specifically, it states:

> It is my opinion that within a reasonable degree of medical certainty, Dr. Christopher Mann deviated from the standard care at the time Trevor Miller was born. While he ordered vaginal cultures, he neglected to follow up upon the results especially in view of Ms. Miller's low-grade temperatures. In addition, standard of care in 1995 required Dr. Mann treat [sic] Susan Miller with antibiotics during labor because of the gram-positive cocci reported by the hospital laboratory. This gram stain finding was strongly suggestive of group B streptococcus infection which was later confirmed by culture resulted shortly after birth. Vertical transmission of GBS during labor or delivery has been known since the 1970s to result in invasive infection in the newborn during the first week of life and can be prevented by antibiotic therapy during labor. Early onset GBS infection is characterized primarily by sepsis, pneumonia, or meningitis. Dr. Mann's failure to treat the group beta streptococcus infection with antibiotics resulted in Trevor's sepsis and ultimately caused his permanent neurological condition.

(*Id.* at 3.) Because the Court has found an export report is necessary, all claims against Warren Hospital individually fail. Accordingly, Dr. Mann's Motion for Summary Judgment is **DENIED**. Warren Hospital's Motion for Summary Judgment as to all claims against it but vicarious liability is **GRATNED**.

### B. Production of Facebook Information, Medical Authorizations, and Supplemental Discovery Responses

Dr. Mann also argued Miller's Amended Complaint against him should be dismissed with prejudice for failing to comply with Revised Scheduling Order III, mandating Miller produce Facebook information, medical authorizations, and supplemental discovery responses by March 10, 2017. (ECF No. 73 at 8-9.) Miller argued his Complaint should not be dismissed because the

Facebook information was in the possession of a third party and he cured all late discovery requests. (ECF No. 76 at 12-14.)

The Federal Rules of Civil Procedure authorize courts to impose sanctions for failure to provide discovery and obey court orders. See Fed. R. Civ. P. 37(b)(2). Where such failures have occurred, dismissal may be an appropriate penalty. *Id.* Generally, in determining whether to impose an involuntary order of dismissal, the Court considers the factors set forth in *Poulis v. State Farm Casualty Co.*, 747 F.2d, 863, 868 (3d Cir. 1984). These factors include:

> (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the plaintiff's conduct; (3) the history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim.

*Id.* No single factor is determinative and dismissal may be appropriate even if some of the factors are not met. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988).

The Court considers the *Poulis* factors in determining whether to dismiss this matter with prejudice. As to Miller's "personal responsibility," the record does not indicate whether Miller, himself, attributed to the discovery delays. In fact, the record demonstrates Miller timely provided all the information he had in his possession, that was not subject to reliance on a third party, such as his Facebook information. (ECF No. 73 ¶ 20 and ECF No. 76-1 ¶ 20.) Accordingly, the Court finds this factor weighs against dismissal.

Regarding whether or not these delays "prejudiced" Dr. Mann, the Court finds Miller's failure to comply with the Order has caused manifest injustice to Dr. Mann. Miller's delays in producing his mother's Facebook information, his medical authorizations, and supplemental discovery requests, have prejudiced Dr. Mann's' "ability to defend this matter as each of these

17

delays limited the amount of time that [Dr.] Mann would have to both obtain and review these documents, have the materials reviewed by the necessary experts and determine if further factual discovery was needed." (ECF No. 73 at 9.) As such, this factor weighs in favor of dismissal.

As to "history of dilatoriness," Miller has had a history of dilatoriness. Miller's continued failure to comply with the Court's Orders supports the dismissal of his claims. As to "willfulness or bad faith," there is no indication in the record that Miller has proceeded in bad faith. However, the Court does find his conduct has been willful. Miller's disregard of the Court's Order and failure to request adjournments supports a finding of willfulness and supports the dismissal of his Complaint.

With respect to "effectiveness of alternative sanctions," Miller has already remedied his defects by submitting all discovery. To the extent Defendants require more time to review the late Facebook information of Miller's mother, medical authorizations, and supplemental discovery, the Court will allow it upon reopening discovery. As such, the Court finds this factor weighs against dismissal.

Lastly, in addressing the meritoriousness of a pleading, courts consider whether "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869–70. However, a Court is not required to "balance both parties' claims and defenses" or to "have a mini-trial before it can impose a default." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 922 (3d Cir. 1992). At this juncture, the Court does not have a sufficient factual record to evaluate the meritoriousness of Miller's claims. Accordingly, this factor is neutral.

"*Poulis* requires the District Court only to balance the six factors and does not set one factor forth as determinative." *See Williams v. Sullivan*, No. 08-1210, 2011 WL 2119095, at *8 (D.N.J.

May 20, 2011), *report and recommendation adopted*, 2011 WL 2112301 (D.N.J. May 25, 2011), *aff'd*, 506 F. App'x 156 (3d Cir. 2012) (quoting *Chiarulli v. Taylor*, No. 08-440, 2010 WL 1371944, at *4 (D.N.J. 2010)). Under these circumstances, the Court finds the *Poulis* factors do not warrant dismissal of Miller's Complaint. Accordingly, Dr. Mann's motion is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above Dr. Mann's Motion for Summary Judgment (ECF No. 73) is **DENIED**. Warren Hospital's Motion for Summary as to all claims against it except vicarious liability is **GRANTED** (ECF No. 74), which shall be limited to the care and treatment provided by Dr. Mann. Defendants have thirty days from this Opinion to submit a declaration of costs and fees associated with Miller's delay in submitting his expert report.

**Date:** January 26, 2018

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**