NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

TREVOR MILLER

    Plaintiff,

v.

WARREN HOSPITAL IPS, PA and
CHRISTOPHER MANN,

    Defendants.

Civil Action No. 3:15-cv-7496-BRM-DEA

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Warren Hospital IPA, PA's ("Warren Hospital") Motion for Summary Judgment as to Plaintiff Trevor Miller's ("Trevor")[1] Apparent Authority Claim. (ECF Nos. 96 and 127.) Both Trevor and Christopher Mann ("Dr. Mann") filed oppositions. (ECF Nos. 97, 101, 129 and 130). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Warren Hospital's Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

The issue before this Court is whether Warren Hospital is vicariously liable for Dr. Mann's alleged medical malpractice under a theory of apparent authority. On January 26, 2018, Warren Hospital filed a Motion for Summary Judgment on this issue. (ECF No. 96.) Both Trevor and Dr.

---

[1] The Court means no disrespect to Trevor Miller and his mother Susan Miller but refers to them by their first name for clarity.

Mann filed oppositions to that Motion. (ECF Nos. 97 and 101.)[2] The facts and procedural history of this matter are set forth in this Court's prior opinion (ECF No. 79), and will not be repeated here. The following factual background, however, is pertinent to this matter.

Susan Miller ("Susan"), Trevor's mother, was treated at Dr. Mann's private office leading up to his birth. (ECF No. 129 at 9.) On June 16, 1995, Susan called Dr. Mann's office when her water broke to inform him that she was on her way to Warren Hospital. (Ex. B to ECF No. 129-1 ¶ 16.) She subsequently reported to Warren Hospital for her labor and delivery and was treated by Dr. Mann. (*Id.*) She signed a "CONSENT FOR ADMISSION AND TREATMENT" clause, displaying a Warren Hospital logo, stating the following, in relevant part:

> I the undersigned agree and give consent for admission to Warren Hospital under the care of my attending physician, his associates, partners, assistants or designees. I further consent to any hospital care prescribed by my physicians, surgeons or other medical personnel employed by me. I further consent and grant authorization to Warren Hospital, its nurses or other personnel whether employed directly by the hospital or brought in on a consulting basis, for all such treatments and procedures as may be necessary for me, in accordance with the judgment of my physician.

(ECF No. 97-2.) Dr. Mann was not an employee at Warren Hospital at the time of Trevor's birth. (*Id.* at 8-9.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary

---

[2] This Motion was inadvertently overlooked when the Court decided Warren Hospital and Dr. Mann's motions for summary judgment with prejudice for failure to state a prima facie case by supporting expert opinions (ECF Nos. 109 and 112) and therefore, will be address herein.

basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J.,

dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III. DECISION

Warren Hospital moves for summary judgment on Trevor's vicarious liability claim on the grounds that it cannot be held liable for the medical malpractice of Dr. Mann because he was an independent contractor and because Trevor has not established facts supporting a claim based on apparent authority, since an unborn child is unable to demonstrate he reasonably believed Dr. Mann rendered care on behalf of Warren Hospital. (*See* ECF No. 96-2 at 3-5.) Warren Hospital further contends that even if this Court imputed Susan's reliance to Trevor, which they argue is irrelevant to the apparent authority claim, the claim still fails because Susan treated at Dr. Mann's

private office leading up to his birth and called Dr. Mann's office when her water broke to inform him that she was on her way to Warren Hospital. (*Id.* and ECF No. 100 at 4-5.)

Trevor and Dr. Mann contend this Court should apply the "implied reliance" standard established by the Illinois Appellate Court in *Monti v. Silver Cross Hosp.*, 637 N.E.2d 427 (Ill. App. Ct. 1994) and impute Susan's reasonable reliance to Trevor. (ECF No. 129 at 7-10 and ECF No. 9-10.) They argue Susan reasonably believed Dr. Mann was an employee of Warren Hospital because she sought care and treatment for labor and delivery services at Warren Hospital and she filled out paperwork upon arrival that contained Warren Hospital's logo. (ECF No. 97 at 9-10 and ECF No. 129 at 8-9.)

Pursuant to New Jersey law, generally, "a principal is immune from liability for the negligence of an independent contractor." *Troilo v. Michner*, No. 13-2012, 2015 WL 7074104, at *2 (D.N.J. Nov. 13, 2015); *Thompson v. Robert Wood Johnson Univ. Hosp.*, No. 09-00926, 2011 WL 2446602, at *11 (D.N.J. June 15, 2011); *Basil v. Wolf*, 935 A.2d 1154, 1169 (N.J. 2007). However, under a theory of apparent authority,

> when a third party accepts the services of an independent contractor under the reasonable belief that the independent contractor had the authority to act on behalf of the principal and that belief was the result of the principal's actions, the principal can be held liable for that independent contractor's actions, even where he did not have actual authority to act.

*Thompson*, 2011 WL 2446602, at *11. As such, "[t]he standard for apparent authority has two elements: (1) conduct by the principal that would lead a person to reasonably believe that another person acts on the principal's behalf; and (2) acceptance of the agent's service by one who reasonably believes it is rendered on behalf of the principal." *Troilo*, 2015 WL 7074104, at 2.

As to the first element, the following factors may be considered to determine whether a hospital's conduct would lead a patient to reasonably believe that a doctor acted on the hospital's

5

behalf:

> (1) whether the hospital supplied the doctor; (2) the nature of the medical care; (3) any notice of the doctor's independence from the hospital or disclaimers of responsibility; (4) the patient's opportunity to reject the care or choose a different doctor; (5) the patient's contacts with the doctor prior to the incident at issue; and (6) any special knowledge about the doctor's contractual arrangement with the hospital.

*Id.* (citing *Estate of Cordero, ex rel. Cordero v. Christ Hosp.*, 958 A.2d 101, 108 (N.J. Super. Ct. App. Div. 2008).). As to the second element, "the plaintiff's reasonable belief may be presumed unless evidence is presented to rebut this presumption." *Id.* (quotations omitted).

In *Cordero*, the court denied the hospital's motion for summary judgment because it found the hospital contracted with Hudson to staff its anesthesiology department with doctors, specifically, the hospital "put in place a system under which [the doctor] arrived, without explanation, on the day of [the plaintiff's] surgery to provide specialized care in the hospital's operating room." *Cordero*, 958 A.2d at 108. The court stated the "doctor has no prior contact with the patient" and therefore, the "totality of these circumstances would lead a reasonable patient in the same situation to assume that [the hospital] furnished the services of the anesthesiologist." *Id.* at 109.

In *Arthur v. St. Peters Hospital*, 405 A.2d 443, 445 (N.J. Super. Ct. 1979), the court found

> This court may take judicial notice that generally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom it might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital.

(citations omitted).

In this matter, it is undisputed that Dr. Mann was not an employee of Warren Hospital during Trevor's birth. It is also undisputed that Trevor could not have a "reasonable belief" that Dr. Mann acted on behalf of Warren Hospital, since he was not born at the time of the medical malpractice. Therefore, the question becomes whether Susan's "reasonable reliance" may be imputed to Trevor and whether there is a question of material fact as to whether Warren Hospital held Dr. Mann out as its agent. Neither party has provided any caselaw to guide the Court and no New Jersey Court has addressed whether Susan's "reasonable reliance" may be imputed to Trevor, who was unborn at the time of the medical malpractice and therefore incapable of having a "reasonable belief."

"In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule." *Pa. Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981). Here, however, the Court finds this issue is a matter that is better left for the New Jersey Supreme Court because even if the Court imputed Susan's "reasonable reliance" to Trevor, it finds that there is no apparent authority.

The closest New Jersey has come to this issue was in *Draper v. Jasionowski*, 858 A.2d 1141 (N.J. Super. Ct. App. Div. 2004), where the appellate division afforded protection to an unborn child. There, the appellate division found that a child has a private cause of action against his mother's obstetrician for prenatal injuries caused by his vaginal delivery when the physician failed to obtain his mother's informed consent prior to delivery. *Id.* at 1148.

Moreover, an Illinois Appellate Court in *Monti* has established an "implied reliance" standard in a similar situation. In *Monti*, the court determined that a patient need not be conscious in order to bring claims under an apparent agent theory. 637 N.E.2d at 430. There, the plaintiff,

7

suffering from a head injury that left her unconscious, was taken by an ambulance to the hospital's emergency room. *Id.* at 428. That hospital had no neurosurgeon on duty at the time and therefore, plaintiff was transferred to another hospital. *Id.* The plaintiff filed suit, and the initial receiving hospital moved for summary judgment arguing that the doctors were independent contractors and not the employees or agents of the hospital. *Id.* Summary judgment was initially granted, and the plaintiff appealed. *Id.* at 429. The defendants argued on appeal that there was no apparent agency because the plaintiff was unconscious when she was brought to the emergency room at the hospital. *Id.* at 430. The appellate court, however, reversed and concluded that it did not matter if the patient was conscious or unconscious because "[t]hose responsible for [the patient] sought care from the hospital, not from a personal physician, and thus, a jury could find that they relied upon the fact that complete emergency room care, including diagnostic testing and support services, would be provided through the hospital." *Id.* The court further noted,

> The same is true for all seriously ill or badly injured patients, whether conscious or not, who come to a hospital emergency room for emergency medical care. Neither logic nor equity would be served by drawing a distinction between conscious and unconscious patients, allowing the former to recover on a theory of vicarious liability but not the latter.

*Id.*

Here, even if the Court predicted New Jersey would impute Susan's reasonable reliance to Trevor, it finds no apparent authority. Unlike in *Cordero*, Susan had prior contact with Dr. Mann. In fact, she treated at Dr. Mann's private office many times leading up to his birth. (ECF No. 129 at 9.) More importantly, she called Dr. Mann's office when her water broke to inform him that she was on her way to Warren Hospital. (Ex. B to ECF No. 129-1 ¶ 16.) She subsequently reported to Warren Hospital for her labor and delivery and was treated by Dr. Mann. (*Id.*) Lastly, Susan signed

a "CONSENT FOR ADMISSION AND TREATMENT" clause, stating the following, in relevant part:

> I the undersigned agree and give consent for admission to Warren Hospital *under the care of my attending physician*, his associates, partners, assistants or designees. I further consent to any hospital care prescribed *by my physicians*, surgeons or other medical personnel employed by me. I further consent and grant authorization to Warren Hospital, its nurses or other personnel whether employed directly by the hospital or brought in on a consulting basis, for all such treatments and procedures as may be necessary for me, *in accordance with the judgment of my physician.*

(ECF No. 97-2.) This consent clause unambiguously indicates that Dr. Mann was an independent contractor and not an agent of Warren Hospital. It explicitly states that Susan would be under the care of *her attending physician*, Dr. Mann.

The totality of the above circumstances would not lead a reasonable patient in the same situation to assume Warren Hospital furnished the services of Dr. Mann. Accordingly, Warren Hospital's Motion for Summary Judgement is **GRANTED**.

**IV. CONCLUSION**

For the reasons set forth above, Warren Hospital's Motion for Summary Judgment is **GRANTED**.

Date: June 21, 2019  */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**